**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEVIN MARTINEZ, *on behalf of himself,*<br>*FLSA Collective Plaintiffs, and the Class,*<br><br>          Plaintiff,<br><br>          v.<br><br>POLLOS MARIO WOODHAVEN CORP.<br>     d/b/a POLLOS MARIO WOODHAVEN,<br>POLLOS MARIO BRENTWOOD CORP.<br>     d/b/a POLLOS MARIO,<br>L.I. POLLOS A LA BRAZA MARIO, LTD.<br>     d/b/a POLLOS MARIO,<br>POLLOS A LA BRAZA MARIO INC.<br>     d/b/a POLLOS A LA BRASA MARIO,<br>POLLOS MARIO CORPORATION<br>     d/b/a POLLOS MARIO,<br>and OSCAR FRANCO,<br><br>          Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff KEVIN MARTINEZ ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorney, hereby files this Class and Collective Action Complaint against POLLOS MARIO WOODHAVEN CORP. d/b/a POLLOS MARIO WOODHAVEN, POLLOS MARIO BRENTWOOD CORP. d/b/a POLLOS MARIO, L.I. POLLOS A LA BRAZA MARIO, LTD. d/b/a POLLOS MARIO, POLLOS A LA BRAZA MARIO INC d/b/a POLLOS A LA BRASA MARIO, POLLOS MARIO CORPORATION d/b/a

POLLOS MARIO (collectively the "Corporate Defendants"), and OSCAR FRANCO ("Individual Defendant", and together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving, (2) unpaid wages, including overtime, due to improper rounding, (3) unpaid wages, including overtime, due to invalid tip credit, (4) unpaid wages due to improper meal credit deductions, (5) reimbursement of uniform purchase costs and maintenance expenses, (6) liquidated damages, and (7) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving, (2) unpaid wages, including overtime, due to improper rounding, (3) unpaid wages, including overtime, due to invalid tip credit, (4) unpaid spread of hours premium, (5) unpaid wages due to improper meal credit deductions, (6) reimbursement of uniform purchase costs and maintenance expenses (7) statutory penalties due to WTPA violations, (8) liquidated damages, and (9) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.     Plaintiff KEVIN MARTINEZ is a resident of Queens County, New York.

6.     Individual Defendant OSCAR FRANCO owns and operates a family-owned chain of roasted chicken restaurants located in New York, New Jersey, and Florida, which operates through the following corporate entities:

a)  Pollos A La Brasa Mario, Inc. – 81-01 Roosevelt Avenue, Flushing, NY 11372 ("Roosevelt location"); and

b)  Pollos Mario Brentwood Corp. – 78 Wicks Road, Brentwood, NY 11717 ("Brentwood location"); and

c)  Pollos Mario Woodhaven Corp. – 6320 Woodhaven Boulevard, Queens, NY 11374 ("Woodhaven location"); and

d)  L.I. Pollos A La Braza Mario, LTD. – 75 N Franklin Street, Hampstead, NY 11550 ("Hampstead location");

e)  Pollos Mario Corporation – 83-02 37th Avenue, Jackson Heights, NY, 11372 ("Jackson Heights location");

f)  Pollos Mario NJ Corp. – 63 Main Street, Hackensack, NJ, 07601 ("Hackensack location");

g)  Pollos A La Brasa Mario Corp. – 8850 S Orange Blossom Trail, Orlando, FL, 32809 ("Florida location")

(collectively, the "Restaurants").

7.     Defendants operate the Restaurants as a single integrated enterprise under the common control and ownership of the Individual Defendant's family. Specifically, all the

Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

a)      The Restaurants are under the control of Corporate Defendants and Individual Defendant. Specifically, Individual Defendant OSCAR FRANCO owns and operates all the Restaurants. *See* **Exhibit A,** Articles identifying Individual Defendant as owner and founder of the Restaurants.

b)      Individual Defendant OSCAR FRANCO is registered as the owner of the trademarks for the names "Pollos Mario" and "Pollos a la Brasa Mario". *See* **Exhibit B.**

c)      Individual Defendant OSCAR FRANCO is identified as the principal of the Roosevelt, Hempstead and Brentwood locations on the liquor license for each establishment. *See* **Exhibit C.**

d)      The Restaurants share a common management. All Restaurants are managed by the members of the Franco family, including Individual Defendant OSCAR FRANCO. *See* **Exhibit A.**

e)      The Restaurants are advertised together on a common website found at www.pollosmario.com with links to each of the Restaurants' respective websites, menus, and delivery services. *See* **Exhibit D.**

f)      All Restaurants are engaged in the same business of providing food service with a common theme, specifically, a no frills, authentic Colombian cuisine, with a focus on roast chicken.

g)      All Restaurants have similar or identical menus with similar or identical prices. *See* **Exhibit E.**

    h) All Restaurants share similar or identical aesthetics: stucco walls and faux terracotta overhangs, as well as bright colors in traditional Colombian shades and designs with similar or identical table settings.

    i) All Restaurants share notably similar signage and logos. *See* **Exhibit F.**

    j) Based on Plaintiff's personal observations, employees, especially bussers and servers, are interchangeable among the Restaurants.

    k) The Restaurants share the payroll methods and have a single, centralized system of labor relations for employees. The Restaurants have applied the same payroll policies during the relevant statutory period.

8. Corporate Defendant POLLOS MARIO WOODHAVEN CORP. d/b/a POLLOS MARIO WOODHAVEN is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and address for service of process located at 63-20 Woodhaven Boulevard, Rego Park, NY, 11374. Defendants control and operate the Woodhaven location through Corporate Defendant POLLOS MARIO WOODHAVEN CORP.

9. Corporate Defendant POLLOS MARIO BRENTWOOD CORP. d/b/a POLLOS MARIO is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and address for service of process at 78 Wicks Road, Brentwood NY, 11717. Defendants own and operate the Brentwood location through Corporate Defendant POLLOS MARIO BRENTWOOD CORP.

10. Corporate Defendant L.I. POLLOS A LA BRAZA MARIO LTD. d/b/a POLLOS MARIO is a domestic business corporation organized under the laws of the state of New York, with a principal place of business and address for service of process at 75 North Franklin Street,

Hempstead, NY, 11550. Defendants own and operate Hempstead location through Corporate Defendant L.I. POLLOS A LA BRAZA MARIO LTD.

11.     Corporate Defendant POLLOS A LA BRAZA MARIO INC. d/b/a POLLOS A LA BRASA MARIO is a domestic business corporation organized under the laws of the state of New York, with a principal place of business and address for service of process at 81-01 Roosevelt Avenue, Jackson Heights, NY, 11372. Defendants own and operate the Roosevelt location through Corporate Defendant POLLOS A LA BRAZA MARIO INC.

12.     Corporate Defendant POLLOS MARIO CORPORATION d/b/a POLLOS MARIO is a domestic business corporation organized under the laws of the state of New York, with a principal place of business at 83-02 37th Avenue, Jackson Heights, NY, 11372 and an address for service of process at 225 Broadway, New York, NY, 10007. Defendants owns and operates Jackson Heights location through POLLOS MARIO CORPORATION.

13.     Individual Defendant OSCAR FRANCO is the founder, owner, principal and executive officer of Corporate Defendants. Individual Defendant OSCAR FRANCO exercises the power to, and also delegates to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff and Class Members. Individual Defendant OSCAR FRANCO has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff and Class Members. Individual Defendant OSCAR FRANCO additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise OSCAR

6

FRANCO and Class Members. Individual Defendant OSCAR FRANCO ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendants are operating efficiently and profitably.

14.     At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

15.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members were directly essential to the businesses operated by Defendants.

16.     At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

17.     Plaintiff brings claims for relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including, but not limited to, waiters, servers, bartenders, food runners, bussers, hosts, barbacks, sommeliers, delivery persons, cooks, dishwashers, expeditors, food preparers, and porters, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

18.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs (i) their proper wages, including overtime, due to timeshaving, (ii) their proper wages, including overtime, due to improper rounding, (iii)

unreimbursed costs for purchasing and maintaining a uniform, and (iv) unpaid wages due to improper meal credit deductions. Further, with respect to tipped employees, Defendants were not entitled to compensate Plaintiff and FLSA Collective Plaintiffs at a tip credit minimum wage hourly rate because they failed to satisfy all statutory requirements for taking a tip credit.

19.    Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

20.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

21.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P."), Plaintiff brings this as a class action, on behalf of all current and former non-exempt (including, but not limited to waiters, servers, bartenders, food runners, bussers, hosts, barbacks, sommeliers, delivery persons, cooks, dishwashers, expeditors, food preparers, and porters, among others) employed by Defendants in the State of New York on or after the date that is six (6) years before the filing of the Complaint in this case (the "Class Members" or "Class").

22.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.

23.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Class and the Tipped Subclass.

24.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, including overtime, due to timeshaving; (ii) failing to pay proper wages due to improper rounding; (iii) failing to pay proper wages due to improper meal credit deductions; (iv) failing to pay spread of hours premiums on shifts longer than ten (10) hours; (v) failing to reimburse uniform purchase and maintenance costs; (vi) failing to provide wage and hour notices to Class Members upon hiring and as legally required thereafter; and (vii) failing to provide proper wage statements for each payment period.

25.     With regards to the Tipped Subclass, Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay proper minimum wages and proper overtime rates due to Defendants' invalid tip credit policy because Defendants (i) failed to properly provide tip credit notices at dates of hiring and annually thereafter, (ii) deducted tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed a tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for continuous periods of time

which exceeded 30 minutes, (iv) failed to provide proper wage statements clearly indicating tip credit allowances for each payment period, and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

26.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

27.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and who have previously represented plaintiffs in wage and hour cases.

28.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries, and damages suffered by each individual Class Members are small, in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress their wrongs. Important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of

these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications with respect to individual Class Members, establishing incompatible standards of conduct for Defendants, resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a)  Whether Defendants employed Plaintiff and Class Members within the meaning of New York Labor Law and applicable state laws;

    b)  What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class Members properly;

    c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay to Plaintiff and the Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates;

e) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked;

f) Whether Defendants properly provided written notice to Plaintiff and Tipped Subclass, in their native language, that Defendants were taking a tip credit;

g) Whether Defendants provided proper tip credit notice to Plaintiff and the Tipped Subclass members at hiring and annually thereafter;

h) Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

i) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

j) Whether Defendants caused tipped employees to engage in non-tipped duties for continuous periods of time exceeding 30 minutes;

k) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked, due to improper rounding;

l) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked, due to timeshaving;

m) Whether Defendants failed to pay spread of hours premiums to Plaintiff and Class Members;

n) Whether Defendants provided proper wage statements informing: (i) Tipped Subclass of the amount of tip credit allowance for each payment period; and (ii) all

non-exempt employees of information required to be provided on wage statements as required under the NYLL;

o)  Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to all non-exempt employees, in their native language, per requirements of the NYLL;

p)  Whether Defendants reimbursed Plaintiff and Class members for their uniform maintenance costs; and

q)  Whether Defendants improperly deducted a meal credit regardless of whether Plaintiff and Class Members consumed their provided meals.

## **STATEMENT OF FACTS**

31.    In or around July 2023, Plaintiff was hired to work as a waiter at Defendants' restaurant located at 63-20 Woodhaven Boulevard, Queens, NY, 11374 (Woodhaven location). Plaintiff's employment with Defendants ended in or around April 2024 when he was terminated.

32.    From July 2023 until January 2024 Plaintiff was compensated at the prevailing tipped credit minimum hourly wage rate of ten dollars ($10.00) per hour. From January 2024 until his termination in April 2024 he was compensated at the prevailing tipped credit minimum hourly wage rate of ten dollars and sixty-cents ($10.65) per hour. Similarly, FLSA Collective Plaintiffs and Tipped Subclass members were compensated at a tip credit wage.

33.    Throughout his employment, Plaintiff worked four (4) days per week. He was scheduled to work from 11:00 A.M. to 9:00 P.M. on Wednesdays, 3:00 P.M. to 11:00 P.M. on Fridays, 1:00 P.M. to 11:00 P.M. on Saturdays, and 2:00 P.M. to 11:00 P.M. Sundays. Plaintiff worked shifts ranging from eight (8) hours to ten (10) hours. Plaintiff's schedule totaled thirty-

seven (37) hours per week. However, on top of his scheduled hours, Plaintiff worked additional hours which raised his actual weekly work hours to over forty (40).

34.     Throughout his employment, Plaintiff was required to cover an additional shift on an as-needed basis. Whenever Plaintiff was approaching forty (40) hours because of this additional shift, Plaintiff was required to clock out before or at the 40-hour mark but was still required to continue working. This resulted in unpaid overtime wages worked over forty (40) hours per week. Similarly, FLSA Collective Plaintiffs and Class Members were required to clock out before or at the 40-hour mark whenever they were worked over forty (40) hours a week.

35.     Throughout his employment, Plaintiff was required by Defendants to work at least sixty (60) minutes after the end of his scheduled shift. However, Plaintiff was never compensated for this time as he was only compensated for his scheduled hours. This resulted in at least four (4) hours of unpaid wages, including overtime hours. FLSA Collective Plaintiffs and Class Members were similarly required to work past their scheduled end times every day but were only compensated for their scheduled shifts.

36.     Throughout his employment, Plaintiff always clocked in and out at the exact minute he started and stopped working. However, Defendants only compensated Plaintiff for his scheduled hours. Moreover, Defendants always rounded down Plaintiff's total work time to the exact hour. Defendants' rounding was mostly in their favor, and in detriment to Plaintiff. FLSA Collective Plaintiffs and Class Members were similarly unable to record their clock in and out times accurately, and had their actual hours rounded down by Defendants.

37.     Defendants' collective timeshaving and improper rounding policy can be identified from Plaintiff's paystubs, where his hours worked were always recorded on exact hours at the zero minute. *See* **Exhibit G**.

38.    Throughout his employment, Plaintiff worked shifts that would last more than ten (10) hours in duration. Specifically, on Wednesdays and Saturdays, Plaintiff was scheduled to work for ten (10) hours. On top of this, Plaintiff was always required to work for at least additional hour past his scheduled shift. Despite working shifts that exceed ten (10) hours in duration, Plaintiff was never compensated any spread of hours premiums as required by the NYLL. Similarly, Class members who worked shifts longer than ten (10) hours in duration were not compensated any spread of hours premiums.

39.    Throughout his employment, Plaintiff was paid at the prevailing tip credit minimum wage. However, Defendants were not entitled to claim any tip credit allowance from Plaintiff under the FLSA or NYLL because Defendants: (i) failed to provide proper notice that a tip credit was being claimed, (ii) claimed a tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two (2) hours or twenty percent (20%) of the total hours each shift, (iii) claimed tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding thirty (30) minutes, (iv) failed to record the tip credit allowance taken on periodic wage statements given to Plaintiff, and (v) failed to accurately keep track of daily tips earned and maintain records thereof. Similarly, Defendants are not entitled to claim any tip credit allowance from the Tipped Subclass members.

40.    Plaintiff never received notice that tip credit was being claimed by Defendants. Similarly, FLSA Collective Plaintiffs, and the Tipped Subclass members never received any tip credit notice.

41.    Plaintiff was required to engage in at least two (2) hours or more than twenty percent (20%) of his working time in non-tipped related activities, including, but not limited to, sweeping, mopping, cleaning the juice machine, setting up the chairs, taking out the trash, refilling

condiments, and rolling silverware (hereinafter the "non-tipped duties"). Similarly, the Tipped Subclass members spent an average of two (2) hours or twenty percent (20%) of the total hours worked each shift on non-tipped duties. Despite Plaintiff, FLSA Collective Plaintiffs, and the Tipped Subclass members engaging in at least two (2) hours of non-tipped work, Defendants improperly claimed tip credit for all hours worked.

42.    Additionally, Defendants improperly claimed a tip credit for all continuous periods of time of Plaintiff's non-tipped, directly supporting work exceeded 30 minutes. Similarly, Defendants improperly claimed a tip credit for all continuous periods of time of the Tipped Subclass members' non-tipped, directly supporting work exceeding 30 minutes.

43.    Throughout his employment, Plaintiff was required wear a uniform that had the company's logo on it. However, Defendants only provided one uniform for Plaintiff to wear every workday. Because the Defendants did not provide him enough uniforms, Plaintiff was forced to spend on washing and drying his uniform everyday. However, Defendants never reimbursed Plaintiff for the maintenance costs Plaintiff incurred throughout his employment. Plaintiff incurred approximately $10.00 per week for maintaining his uniforms. Similarly, FLSA Collective Plaintiffs and Class members were not provided with enough uniforms and were not reimbursed for maintenance costs.

44.    Defendants also implemented a policy that should employees lose their provided uniforms, they are required to purchase another one. Plaintiff lost his provided uniform and because of the foregoing policy, Plaintiff was required to purchase a new uniform. Throughout his employment, Plaintiff had to purchase at least two (2) uniforms. Plaintiff spent approximately $15.00 per uniform. Defendants never reimbursed Plaintiff for the costs of purchasing new

uniforms in violation of the FLSA and the NYLL. Similarly, FLSA Collective Plaintiffs and Class members were not reimbursed for the cost of purchasing new uniforms.

45.     Throughout Plaintiff's employment, Defendants deducted a meal credit from employees' wages, without regard to whether their employees actually consumed the credited meal and without regard to whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups.[1] Defendants automatically deducted meal credits from Plaintiff's wages, despite him not being able to take meal breaks. Because he rarely had meal breaks, he was not able to consume the meals provided. However, despite the fact that Plaintiff was not able to consume the meals provided by Defendants, Plaintiff would still have a meal credit deducted from his wages. Defendants implemented a scheme where they would provide a blank form to their employees that was supposed to record the meals consumed by the employees. However, Defendants prohibited their employees from filling this form out yet required them to sign it. Defendants had no actual records of the meals that their employees consumed but still deducted meal credits. All FLSA Collective Plaintiffs and Class Members were subject to this scheme and had a meal credit deducted from their wages regardless of whether they actually consumed the credited meals or not.

46.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL. Defendants failed to reflect the actual number of hours worked and also failed to provide Plaintiff and Class Members with proper pay stubs reflecting the tip credits claimed for each pay period.

---

[1] 12 NYCRR § 146-3.7

47.    Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

48.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class members at the beginning of their employment with Defendants.

49.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, which the WTPA requires. *See Rojas v. Splendor Landscape Designs*, Ltd., 268 F. Supp. 3d 405, 413 (E.D.N.Y. 2017) ("Here, it is undisputed that the wage statements furnished to Plaintiffs were inaccurate in that they did not reflect all of the hours worked by Plaintiffs. Nor did they reflect Plaintiffs' *actual* pay rates.") (emphasis added); *Brito v. Lucky Seven Rest. & Bar, LLC*, 2021 U.S. Dist. LEXIS 55822, at *36 (S.D.N.Y. Mar. 24, 2021) ("And of course, the wage statements are inaccurate more generally in falsely portraying Brito's pay as the product of an hourly, rather than a weekly, wage rate."). The wage statements furnished to Plaintiff were inaccurate because the wages stated therein did not include proper rate at which Plaintiff should be paid and the actual hours that Plaintiff worked. Instead, they reflected the tip credit minimum wage which Defendants were not entitled to claim, and the rounded scheduled hours of Plaintiff.

50.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees

to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

51.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

52.    Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total wages that Plaintiff and Class Members are entitled to, as opposed to what they received, Defendants would have had to either (a) increase the latter to correspond to the with the former or (b) forthrightly acknowledge, by way of the wage statement, that the wages received did *not* correspond to the wages that Plaintiff and Class Members were entitled to. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the

NYLL. The deprivation of these possibilities therefore constitutes an injury.

53.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

54.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

55.     The direct effect of understating the wages earned on wage statements, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2[1] and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[2]

56.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March

--------

[2] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

57.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

58.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the wages earned been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages paid for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome,

it constitutes an injury sufficient to provide Plaintiff with Article III standing.

59.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

60.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

61.    Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

62.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

63.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

64.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members, in violation of the NYLL.

65.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class Members, in violation of the NYLL.

66.    Defendants knowingly and willfully operated their business with a policy of not paying the FLSA minimum wage or the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiff, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass Members. Defendants were not entitled to claim any tip credits under the FLSA and the NYLL.

67.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class Members their proper wages, including overtime, due to improper rounding, in violation of the FLSA and the NYLL.

68.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class Members their proper wages, including overtime, due to timeshaving, in violation of the FLSA and the NYLL.

69.    Defendants knowingly and willfully operated their business with a policy requiring Plaintiff, FLSA Collective Plaintiffs and the Class Members to improperly cover their own uniform costs in violation of the FLSA and the NYLL.

70.    Defendants knowingly and willfully operated their business with a policy of deducting invalid meal credits from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

71.    Defendants knowingly and willfully operated their business with a policy of failing to pay spread of hours premiums to Plaintiff and Class Members for days worked with a spread of ten or more hours, in violation of the NYLL.

72.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class Members.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

73.     Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

74.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

75.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

76.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

77.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to timeshaving.

78.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to improper rounding.

79.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiff and a subclass of FLSA Collective Plaintiffs, due to an invalid tip credit. Defendants were not entitled to claim any tip credits from Plaintiff and FLSA Collective Plaintiffs under the FLSA.

80.     At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiff and FLSA Collective Plaintiffs.

81.     At all relevant times, Defendants had a policy and practice of not reimbursing Plaintiff and FLSA Collective Plaintiffs for their uniform purchase and maintenance costs.

82.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA, as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, when Defendants knew or should had known such was due.

83.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

84.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

85.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, unpaid wages due to invalid meal credit, reimbursement for uniform maintenance costs, plus an equal amount as liquidated damages.

86.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

87.     Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

88.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

89.    At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime, in direct violation of the NYLL.

90.    At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime due to timeshaving, in direct violation of the NYLL.

91.    At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime due to improper rounding, in direct violation of the NYLL.

92.    At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime due to invalid tip credit, in direct violation of the NYLL. Defendants were not entitled to claim any tip credit from Plaintiff or Class Members under the NYLL.

93.    At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including spread of hours premiums, in direct violation of the NYLL.

94.    Defendants willfully violated Plaintiff's and Class Members' rights by improperly deducting meal credits from Plaintiff and Class Members regardless of whether the meal credit deducted exceed the meals' "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, whether Plaintiff and Class Members consumed the meals in question, and whether Plaintiff and Class Members consumed the meals in question during a reasonable meal period.

95.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with reimbursement for reasonable uniform purchase and maintenance costs.

96.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper tip notices, at date of hiring and annually thereafter, as required under the NYLL.

97.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

98.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage statements, as required under the NYLL.

99.     Due to Defendants' NYLL violations, Plaintiff, Class Members and the Tipped Subclass Members are entitled to recover from Defendants their unpaid wages, including overtime, unpaid wages due to invalid meal credits, unpaid spread of hours premiums, unpaid uniform maintenance costs, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and the Class, respectfully requests that this Court grant the following relief:

a.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.     An award of unpaid wages, including overtime, due to timeshaving, due under the FLSA and the NYLL;

d.     An award of unpaid wages, including overtime, due to improper rounding, due under the FLSA and the NYLL;

e.     An award of unpaid wages, including overtime, due to invalid tip credit deductions, due under the FLSA and the NYLL ;

f.     An award of unpaid wages due to unpaid spread of hours premiums, due under the NYLL;

g.     An award of unpaid wages due to Defendants' improper meal credit deductions, due under the FLSA and the NYLL;

h.     An award of reimbursement for the cost of maintaining and purchasing their uniform, due under the FLSA and the NYLL;

i.     An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

j.     An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

k.     An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

l.     An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

m.    Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n.    Designation of this action as a class action pursuant to F.R.C.P. 23;

o.    Designation of Plaintiff as Representative of the Class;

p.    Designation of Plaintiff as Representative of the Tipped Subclass; and

q.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: August 14, 2024
       New York, New York

                                        Respectfully submitted,

                              By:    */s/ C.K. Lee*
                                     C.K. Lee, Esq.

                                     **LEE LITIGATION GROUP, PLLC**
                                     C.K. Lee, Esq. (CL 4086)
                                     148 West 24th Street, Eighth Floor
                                     New York, NY 10011
                                     Tel.: 212-465-1188
                                     Fax: 212-465-1181
                                     *Attorneys for Plaintiff, FLSA Collective*
                                     *Plaintiffs, and the Class*